IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTEN K.,[1] | ) |
|        Plaintiff, | ) |
| v. | ) No. 20 C 5177 |
| | ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) Maria Valdez |
| Commissioner of Social Security,[2] | ) |
|        Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Kristen K.'s claim for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 25] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 32] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On February 21, 2017, Plaintiff filed a claim for SSI, alleging disability since June 23, 1998. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 8, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A psychiatrist hired by Plaintiff's attorney and a vocational expert ("VE") also appeared at the hearing. A supplemental hearing was held on September 17, 2019. At the supplemental hearing, Plaintiff's psychiatrist, an impartial medical expert ("ME"), and a second VE appeared and testified. Plaintiff amended her alleged onset date of disability to February 21, 2017.

On October 2, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of February 21,

2017. At step two, the ALJ concluded that Plaintiff has a severe impairment of autism. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: can tolerate occasional contact with supervisors and co-workers, but no contact with the public; can learn simple instructions; can engage in simple repetitive tasks independently; can sustain concentration for simple tasks; can adapt and respond to occasional changes in the work setting; can make simple work-related decisions independently; and cannot work with fast-paced or timed tasks or tandem tasks and cannot have hourly quotas, but can engage in work with production goals. At step four, the ALJ concluded that Plaintiff has no past relevant work. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

**I.  ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

4

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his

5

conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's logical errors in evaluating the opinion evidence requires remand; (2) the ALJ erred in assessing Plaintiff's RFC; and (3) the ALJ's decision is constitutionally defective. Each argument will be addressed below in turn.

#### A. The ALJ's Evaluation of the Opinion Evidence

In advancing her first argument, Plaintiff primarily takes issue with the ALJ's assessment of the opinions of Dr. Mark Amdur, her hired psychiatrist. As an initial matter, the ALJ noted that Plaintiff had a "psychiatric evaluation on

6

September 17, 2018 by psychiatrist Mark Amdur, M.D., at the request of the representative solely for purposes of this appeal." (R. 24.) The ALJ further noted that Plaintiff "underwent [the] mental evaluation by Dr. Amdur that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal." (*Id.* at 36.) Plaintiff protests that her "referral to Dr. Amdur does not negate the value of his opinions." (Pl.'s Br. at 6.) However, the ALJ was entitled to note the nature of the relationship between Plaintiff and Dr. Amdur. *See Shannon M. v. Saul*, No. 18 C 7074, 2020 WL 264522, at *10 (N.D. Ill. Jan. 17, 2020) ("[T]he Seventh Circuit has acknowledged the potential for certain doctors to be biased in favor of patient's application for benefits."). Further, as elaborated upon below, the ALJ otherwise fulsomely analyzed Dr. Amdur's opinions beyond her notation of the referral relationship.

The ALJ acknowledged Dr. Amdur's opinion that "he did not think that the claimant could do a simple job because she cannot concentrate or disengage from what she is doing." (R. 30.) However, in discounting that opinion, the ALJ reasoned that Dr. Amdur "is no longer active in his medical practice" and "he was unfamiliar with the Social Security Administration rules and regulations as to medically determinable impairments . . . or quantification of work related abilities and limitations due to medical impairments." (*Id.* at 29.) The ALJ further noted that Dr. Amdur "offered his testimony based on a single interview of the claimant and her mother" and it was "unknown if he saw all the education records or a selection of

7

them as the dates and specific reports were not specifically delineated in his assessment." (*Id.* at 30.)

In ultimately finding Dr. Amdur's testimony and opinions unpersuasive, the ALJ explained as follows:

> At [the] hearing, Dr. Amdur admitted that he is not treating the claimant. He did a one-time evaluation and was paid for his report and testimony. He admitted that he based his assessment on the reports of claimant and her mom. He did not make observations other than the MOCA, which had normal overall results, but an overly detailed clock. His report includes "marked" and other terminology which may be the same terminology SSA uses, but in his report [is] undefined and very likely not holding the same meaning since he was only vaguely familiar with the listings and admitted [no] specific training on SSA programs. Dr. Amdur ultimately indicated that he disagreed with the principles SSA uses (requiring objective findings for MDI, namely). While he may disagree, it does cause his ultimate conclusions to be less reliable since he has made his assessment on his own brand [of] "disability" and not based on the standardized assessment to which I am bound. This was further highlighted when contrasted to the DDS findings and the medical expert's testimony, as well. All told, I give Dr. Amdur's opinion little weight.

(R. 37 (citations omitted).) So, the ALJ decided to give Dr. Amdur's opinions little weight because, *inter alia*, he was not a treating physician; he was unfamiliar with the applicable rules and regulation; he saw Plaintiff on only one occasion; he may not have seen all the relevant records; he rendered opinions predicated mainly on subjective reports; and he rendered opinions that were inconsistent with other medical opinions in the record. The Court finds that the ALJ gave sufficiently good reasons for discounting Dr. Amdur's opinions. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). The Court declines Plaintiff's invitation to reweigh the

8

evidence in relation to Dr. Amdur's opinions, which is forbidden. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).[3]

Plaintiff also claims error with respect to the ALJ's assessment of the opinions of the two State agency psychologists. The ALJ gave "great weight to the non-examining state agency psychologists" reasoning that "their opinions remain reasonably viable and are consistent with other cumulative evidence of record developed after their determination." (R. 35.) Plaintiff maintains that the ALJ did not sufficiently analyze certain differences between the two opinions. However, the Court agrees with Defendant that Plaintiff "demands too much" by "demand[ing] that the ALJ address every detail in these opinions that did not perfectly align and 'resolve the conflict' between them." (Def.'s Memo. at 24.) Here, the Court will not nitpick the ALJ's decision so as to require perfection, as that is not the applicable standard. *See Brenda L. v. Saul*, 392 F. Supp. 3d 858, 871 (N.D. Ill. 2019) ("The ALJ's decision may not be perfect, but it need not be.") (citations omitted); *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading.") (citation omitted).

Lastly, Plaintiff takes issue with the ALJ's assessment of the opinions of Theresa Kopitzke, a vocational evaluator. The ALJ noted that Ms. Kopitzke was

---

[3] Plaintiff complains that, with respect to Dr. Amdur's opinion, the ALJ "did not discuss its supportability or consistency with the evidence." (Pl.'s Br. at 9.) The Court notes that the new regulations stressing the need for explication of those factors apply to claims filed on or after March 27, 2017. Here, Plaintiff's claim was filed before that date. And, in any event, the Court finds that the ALJ appropriately assessed the supportability and consistency of Dr. Amdur's opinions in her lengthy analysis.

9

"referred by the claimant's attorney for the sole purpose of this appeal" and that she authored a vocational evaluation. (R. 27.) The ALJ correctly "did not weigh" the vocational evaluation because it "is not a medical opinion." (*Id.* at 37.) *See* 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a *medical source* about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions.") (emphasis added). The ALJ nonetheless did consider the vocational evaluation "according to weighing opinions of non-medical sources." (R. 37.) In finding the vocational evaluation unpersuasive, the ALJ explained that Ms. Kopitzke is "a non-medical professional utilizing tests not relevant to mental health impairments that showed difficulty in some tests during this one-time assessment without a reasonable medical nexus to these tests or demonstrating that difficulties would be sustained over time despite obvious academic successes." (*Id.*) The Court finds no error in the ALJ's assessment of Ms. Kopitzke's non-medical opinions that would require remand.

### B. The ALJ's RFC Assessment

Plaintiff's second argument[4] boils down to an assertion that the ALJ impermissibly "relied on her lay view of the evidence" in arriving at the RFC

---

[4] The heading to Plaintiff's second argument contains a reference to Plaintiff's "Subjective Allegations." (Pl.'s Br. at 12.) However, the body of Plaintiff's opening brief does not specifically raise any arguments pertaining to the ALJ's assessment of her subjective symptoms. Accordingly, the Court need not consider Plaintiff's wholly undeveloped challenge. *See Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived.") (citation omitted). And, in any event, the Court finds that Plaintiff has not met her burden of demonstrating that the ALJ's credibility analysis was "patently wrong." *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

10

assessment. (Pl.'s Br. at 12.) Plaintiff's contention in that regard is readily disproven. In reaching her RFC assessment, the ALJ relied heavily on the opinions of Dr. Ann Monis, the ME in this case. The ALJ noted Dr. Monis' opinions "that the claimant was able to have occasional contact with supervisors and co-workers, but none with the public" and "was able to understand simple instructions, able to perform simple repetitive tasks independently, sustain concentration for simple tasks, able to adapt and respond to infrequent changes in the work setting, and make simple work related decisions independently." (R. 31.) The ALJ gave Dr. Monis' opinion "great weight" and found it to be "the most persuasive overall." (*Id.* at 37.) The ALJ reasoned that Dr. Monis "is a specialist in psychology, who is familiar with SSA policy and regulations, she reviewed the complete documentary record, and she provided a detailed explanation with references to the evidence in the record to support her opinion." (*Id.*) The Court finds that the ALJ was justified in arriving at an RFC that largely mirrored the ME's medical opinions. *See Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019).

The Court also rejects Plaintiff's suggestion that the ALJ was impermissibly "playing doctor" by considering and weighing the evidence in relation to the disputed medical opinions. *See Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886-87 (N.D. Ill. 2003) ("Our review of the record indicates that the ALJ was not 'playing doctor,' but performing his duty to consider and weigh the evidence."). Indeed, "comparing and weighing the different [medical] opinions differently based on whether they were supported by the medical record as a whole . . . is exactly what

11

the ALJ is supposed to do." *Roy R. v. Kijakazi*, No. 10 CV 1687, 2022 WL 1185601, at *13 (N.D. Ill. Apr. 21, 2022) (citations omitted). That is what the ALJ did here.

Furthermore, the ALJ's overall RFC determination is supported by her notations that Plaintiff: "was generally socially appropriate" (R. 19); "related well to her teachers and school staff" (*id.*); "had good capacity for abstract conceptual reasoning and had a general[ly] good fund of information" (*id.* at 20); "was smart and [a] hard work[ing] student, who was able to follow directions and [was] dedicated to achieving her goals" (*id.* at 21); "is a full time student [at University of Illinois at Chicago] in the Honors Program and is applying for a master's degree program" (*id.* at 22); "works analyzing data in a lab and assisting her mentor with projects" (*id.*); had a "high school transcript [that] reflected mostly honors and advanced placement courses in which she generally received A's" (*id.* at 25); "was able to read and comprehend well above grade level" (*id.*); and "was smart, polite and [a] hard worker, was able to follow directions, dedicated to achieving her goals and able to prioritize, and enjoyed various activities" (*id.* at 26). The ALJ aptly summarized that "[t]he evidence shows that the claimant should be able to sustain simple, repetitive tasks independently with reduced pressures and pace of the work as described in the RFC" and "the records fail to demonstrate that the claimant could not sustain work activities with the reduced social interactions contemplated in this RFC." (*Id.* at 33-34.)

Ultimately, as Defendant points out, "[i]t is hard to understand how plaintiff can assert that the ALJ 'relied on her lay view of the evidence' to formulate the

12

residual functional capacity, when the residual functional capacity finding mirrored an opinion offered by a qualified psychological expert who had reviewed the entire record and testified under oath and subject to cross-examination at hearing." (Def.'s Memo. at 27.) And, at bottom, the Court agrees with Defendant that the ALJ "reasonably concluded that plaintiff, an honors college student studying biomedical engineering, could perform a reduced range of work that accommodated her social, attention, and pace-related limitation." (*Id.* at 1.)

### C. Plaintiff's Constitutional Argument

Finally, Plaintiff devotes one paragraph to an argument that "[t]he appointment of Andrew Saul as a single Commissioner of SSA who is removable only for cause and serves a longer term than that of the President violates separation of powers [such that] the decision in this case, by an ALJ and Appeals Council Judges who derived their authority from Mr. Saul, is constitutionally defective." (Pl.'s Memo. at 14-15.) Plaintiff's contention is predicated on the Supreme Court's decision in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), in which the Court held that it is unconstitutional for a federal administrative agency to be led by a single official who can be removed by the President only for cause. However, following the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), "numerous courts have ruled that a frustrated Social Security applicant mounting a constitutional challenge based on *Seila Law* must show that the unconstitutional removal provision actually caused her harm in some direct and identifiable way." *Cheryl T. v. Kijakazi*, No. 20 C 6960, 2022 WL 3716080, at *4

13

(N.D. Ill. Aug. 29, 2022). That is, the claimant "must show a nexus between the removal restriction and the harm suffered, and the mere fact of a disappointing outcome on her application for Social Security benefits will not suffice." *Id.* (citation and internal quotations omitted). A claimant "could establish the requisite nexus by showing that 1) the commissioner played a role in the agency action and 2) the president would have removed the commissioner to prevent the action but-for the removal provision." *Id.* (citation and internal quotations omitted).

 Based on this authority, the Court finds that Plaintiff's constitutional argument fails because she has not shown that the removal provision in question actually caused her harm in some direct and identifiable way. *See Lizette C. v. Kijakazi*, No. 21 C 3517, 2022 WL 3369274, at *2 (N.D. Ill. Aug. 16, 2022) ("[E]ven if *Seila* rendered unconstitutional the statute governing removal of the SSA Commissioner, plaintiff would be entitled to a remand only if she were harmed by the unconstitutional statute, a showing plaintiff has not made.") (citation omitted). The required nexus is missing, and Plaintiff has not established that the identity of the Commissioner in any way affected the ALJ's decision in this case. Accordingly, the Court rejects Plaintiff's final argument. *See Michelle S. v. Kijakazi*, No. 21 CV 2577, 2022 WL 4551967, at *7 (N.D. Ill. Sept. 29, 2022) ("In sum, the Court agrees with the overwhelming weight of authority in this circuit and nationwide and finds Claimant's constitutional argument without merit.") (citations omitted).

14

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 25] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 32] is granted.

**SO ORDERED.**　　　　　　　　　　　　**ENTERED:**

**DATE:　　October 7, 2022**　　　　　　_____
　　　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**